# United States Court of Appeals for the Federal Circuit

---

**FEDMET RESOURCES CORPORATION,**
*Plaintiff-Appellee*

**v.**

**MAGNESIA CARBON BRICKS FAIR TRADE COMMITTEE,**
*Defendant-Appellant*

**UNITED STATES,**
*Defendant*

---

2026-1160

---

Appeal from the United States Court of International Trade in No. 1:23-cv-00117-MMB, Judge M. Miller Baker.

---

Decided: August 11, 2026

---

R. WILL PLANERT, Taft Stettinius & Hollister LLP, Washington, DC, argued for plaintiff-appellee. Also represented by DONALD B. CAMERON, JR., NICHOLAS DUFFEY, JORDAN FLEISCHER, MARY HODGINS, JULIE MENDOZA, BRADY MILLS, EDWARD JOHN THOMAS, III.

ASHLEY CHARLES PARRISH, King & Spalding LLP, Washington, DC, argued for defendant-appellant. Also

represented by KELLAM CONOVER, JAMES MICHAEL TAYLOR, DANIEL SCHNEIDERMAN.

––––––––––––––––––

Before PROST, CHEN, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

This case concerns the United States Court of International Trade's decision sustaining the determination of the United States Department of Commerce on remand. Commerce had initially determined that imports of certain refractory bricks containing five percent or less alumina are still within the scope of antidumping and countervailing duty orders on imports of magnesia carbon bricks from Mexico and the People's Republic of China. On appeal, the Trade Court concluded that this court previously held that the addition of *any* alumina to a magnesia carbon brick took it outside the scope of the orders and remanded to Commerce for reconsideration. On remand, Commerce determined under protest that the subject bricks are not within the scope of the orders. After the Trade Court sustained Commerce's redetermination, Magnesia Carbon Bricks Fair Trade Committee appealed to this court. For the following reasons, we affirm.

## BACKGROUND

Domestic industry participants believing that "a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value" may petition Commerce to impose antidumping duties on importers of foreign merchandise. 19 U.S.C. §§ 1673, 1673a(b). If Commerce determines that the subject foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and the United States International Trade Commission determines that an industry in the United States has been materially injured or is threatened with material injury, Commerce will issue an

antidumping duty order. *Id.* §§ 1673, 1673e(a). The antidumping duty order "includes a description of the subject merchandise, in such detail as [Commerce] deems necessary." *Id.* § 1673e(a)(2).

Similarly, domestic industry participants believing that a government or public entity within a foreign country is providing a countervailable subsidy for a class or kind of merchandise that is imported, sold, or likely to be sold into the United States may petition Commerce to impose countervailing duties on such merchandise. *Id.* §§ 1671(a), 1671a(b). If Commerce determines that a countervailable subsidy is being provided to such merchandise and the ITC determines that an industry in the United States has been materially injured or is threatened with material injury, Commerce will issue a countervailing duty order. *Id.* §§ 1671(a), 1671e(a). Like an antidumping duty order, a countervailing duty order "includes a description of the subject merchandise, in such detail as [Commerce] deems necessary." *Id.* § 1671e(a)(2).

After an antidumping or countervailing duty order has issued, an interested party may file with United States Customs and Border Protection an allegation that "reasonably suggests" an importer has evaded the order. *Id.* § 1517(b)(1)–(2), (a)(2)–(3). The statute defines "evasion" as the entry of goods through any material false statement or omission that reduces or avoids such duties. *See id.* § 1517(a)(5)(A). If, in investigating the alleged evasion, Customs "is unable to determine whether the merchandise at issue is covered" by an antidumping or countervailing duty order, it must refer that question to Commerce. *See id.* § 1517(b)(3)–(4), (a)(1), (a)(3). In such a "covered merchandise" referral, Commerce may conduct a scope proceeding to determine whether merchandise is covered by the antidumping or countervailing duty orders. *See* 19 C.F.R. § 351.227(f); *see also id.* § 351.225(a), (c)(1) (allowing "[a]n interested party [to] submit a scope ruling application requesting that the Secretary conduct a scope

inquiry to determine whether a product . . . is covered by the scope of an order" even before allegations of evasion).

In reviewing the language of an antidumping or countervailing duty order to determine whether particular products are included within its scope, Commerce may consider so-called (k)(1) sources, including "descriptions of the merchandise contained in the petition," "descriptions of the merchandise contained in the initial investigation," "[p]revious or concurrent determinations of the Secretary[ of Commerce], including prior scope rulings," and "[d]eterminations of the [ITC]." *Id.* § 351.225(k)(1)(i). Only if these (k)(1) sources are not dispositive may Commerce consider so-called (k)(2) sources, including the physical characteristics of the product, the expectations of the ultimate users, the ultimate use of the product, the channels of trade in which the product is sold, and the manner in which the product is advertised and displayed. *Id.* § 351.225(k)(2)(i).

A

Against this backdrop, we now provide the factual background in this case. In 2009, Resco Products, Inc.,[1] a domestic producer of refractory bricks, petitioned Commerce to open antidumping and countervailing duty investigations of "imports of certain magnesia carbon bricks" (MCBs) from Mexico and the People's Republic of China. *Fedmet Res. Corp. v. United States* (*Fedmet I*), 755 F.3d 912, 914 (Fed. Cir. 2014). MCBs "are a type of refractory brick used to line ladles and furnaces employed in steelmaking and steel handling processes." *Id.* Resco's petition proposed that the "domestic like product" (i.e., a U.S.-manufactured good that is identical or most similar in

---

[1]    Appellant Magnesia Carbon Bricks Fair Trade Committee is an ad hoc association that presently comprises Resco Products, Inc.

characteristics and uses to a foreign product being investigated for unfair trade) be defined to cover only MCBs. *Id.*; 19 U.S.C. § 1677(10). The petition further explained that "[t]here are several types of standard refractory bricks *in addition to* [MCBs], the subject of this petition," including "magnesia alumin[a] carbon brick." *Fedmet I*, 755 F.3d at 914 (third alteration in original) (citation omitted). But, the petition continued, these other types of bricks "are not generally substitutable in a technical sense." *Id.* (emphasis removed) (citation omitted). This language prompted further inquiry by Commerce, which asked Resco how its proposed scope excludes these other types of refractory bricks. In response, Resco stated that "[t]he scope of our petition focuses only on MCB[s]," reiterated that no other brick "achieve[s] performance levels in furnace and ladles like MCB[s]," and explained that it is not "necessary to revise the scope" based on Commerce's question. *Id.* at 915 (emphasis removed). In other words, Resco limited the proposed scope of the investigation to MCBs and distinguished MCBs from other types of refractory bricks, including "magnesia alumin[a] carbon" (MAC) bricks. *See id.* at 914–15. Commerce subsequently imposed antidumping and countervailing duty orders consistent with the scope defined by Resco. *Id.* at 916. As relevant here, the orders state:

> The scope of these orders includes certain chemically-bonded (resin or pitch), magnesia carbon bricks with a magnesia component of at least 70 percent magnesia ("MgO") by weight, regardless of the source of raw materials for the MgO, with carbon levels ranging from trace amounts to 30 percent by weight, regardless of enhancements (for example, magnesia carbon bricks can be enhanced with coating, grinding, tar impregnation or coking, high temperature heat treatments, anti-slip treatments or metal casing) and regardless of

whether or not antioxidants are present (for example, antioxidants can be added to the mix from trace amounts to 15 percent by weight as various metals, metal alloys, and metal carbides).

*Certain Magnesia* Carbon *Bricks From Mexico and the People's Republic of China: Antidumping Duty Orders*, 75 Fed. Reg. 57,257, 57,257 (Sep. 20, 2010); *see Certain Magnesia Carbon Bricks From Mexico and the People's Republic of China: Countervailing Duty Order*, 75 Fed. Reg. 57,442, 57,442 (Sep. 21, 2010).

In 2011, Fedmet Resources Corporation, a "domestic importer of refractory bricks and other products used in the steelmaking industry," requested a scope ruling that the orders did not cover its Bastion® brand MAC bricks. *Fedmet I*, 755 F.3d at 916. Fedmet contended that the "significant amounts" of alumina (i.e., aluminum oxide) in those bricks "result in 'distinct properties'" that distinguish them from in-scope MCBs. *Id.* at 916–17. For example, "Fedmet explained that the alumina facilitates the formation of fused magnesia spinel when MAC bricks are heated to steelmaking temperatures, which prevents cracks and decreases chemical attack by promoting permanent expansion and closing pores in the bricks." *Id.* at 917. Resco opposed Fedmet's scope ruling request, arguing that there was no such thing as a MAC brick and urging Commerce to "reject Fedmet's self-serving attempt to unilaterally create this product by simply adding alumina to the mix." J.A. 2110. Resco claimed that Fedmet had "unilaterally created this so-called product and product name in order to specifically circumvent the scope of the orders." J.A. 2111.

After agency proceedings and litigation in which Resco participated, we agreed with Fedmet. *See Fedmet I*, 755 F.3d at 919–23. We held that the (k)(1) sources "unequivocally confirm that Fedmet's MAC bricks are not within the scope of the orders" because, in initially seeking

the antidumping and countervailing duty orders, Resco repeatedly "disclaim[ed] coverage of all MAC bricks in general." *Id.* at 919. On remand, Commerce determined that Fedmet's Bastion bricks were MAC bricks with "8 to 15 percent . . . alumina" and thus out-of-scope of the orders. J.A. 2125. But Commerce limited its ruling to Fedmet's Bastion bricks and stated that it did not intend to "address all" products characterized as MAC bricks because on the record before it "there [was] no apparent industry standard" for defining them. J.A. 2125–26.

Commerce subsequently conducted a second scope ruling on the same orders but related to S&S Refractories, LLC's imported MAC bricks. There, Commerce reaffirmed that, in accordance with the decision of this court in *Fedmet I*, MAC bricks are outside the scope of the orders. However, Commerce required that S&S Refractories' MAC bricks meet a minimum cut-off—i.e., at least five percent added alumina measured by x-ray diffraction (XRD)—to be outside the scope of the orders. Commerce again "limited [its] analysis to only those MAC bricks identified in [S&S Refractories'] scope application and not all bricks designated as MAC bricks." J.A. 2134.

B

After the Fedmet and S&S Refractories scope rulings, the Magnesia Carbon Bricks Fair Trade Committee filed an allegation with Customs in 2019, accusing Fedmet of evading the orders by unlawfully characterizing its Pinnacle® brand MCBs from China as non-subject MAC bricks. Customs initially investigated and concluded that substantial evidence demonstrated that Fedmet falsely declared MCBs as non-subject MAC bricks and failed to pay duties on the merchandise. On appeal to the Trade Court, Fedmet challenged the testing and reporting methods that Customs had used during its investigation and argued that Customs' evasion determination contravened this court's

holding in *Fedmet I*. Customs then filed a motion for voluntary remand, which the Trade Court granted. On remand, Customs concluded that it was unable to determine whether the imported bricks constituted covered merchandise and referred the question to Commerce.

In its scope inquiry, Commerce explained that "[a]lumina is the defining component of a MAC brick" and observed that, in the earlier Fedmet and S&S Refractories scope rulings, it had considered the percentage of alumina necessary to constitute MAC bricks. J.A. 1014–15. Indeed, Commerce previously determined that Fedmet's Bastion brand bricks containing at least "eight percent alumina" and S&S Refractories' bricks containing "at least five percent added alumina" were out-of-scope MAC bricks. J.A. 1015. Taken together, Commerce determined that these scope rulings "established that refractory bricks containing a threshold amount of alumina" (i.e., at least five percent) at the time of sale and importation are out-of-scope MAC bricks. J.A. 1014–16 & n.26 (agreeing with the S&S Refractories ruling that "explicitly stated that the alumina must be 'added,' i.e., deliberately present in the brick through the production process (rather than subsequently developed through oxidation in the testing process)" (emphasis removed)). Accordingly, Commerce determined that one of Customs' reports relying on XRD testing "provide[d] the alumina content . . . as it exist[ed]" at the time of "sale and importation," and thus allowed a finding that two of the eleven samples constituted in-scope MCBs because they contained less than five percent alumina. J.A. 1017–19; *see id.* (finding Customs' other three test reports indeterminate).

After receiving Commerce's response, Customs conducted additional laboratory testing, using XRD, on the nine brick samples that Commerce found indeterminate. Applying Commerce's five-percent standard, Customs decided that seven of the nine additional samples were in-scope MCBs because their alumina content did not meet

that threshold. The remaining two samples had alumina content above the threshold and were out-of-scope MAC bricks. Based on those findings, Customs concluded that Fedmet "entered covered merchandise . . . through evasion." J.A. 12 n.8 (omission in original) (citation omitted).

Fedmet then filed suit before the Trade Court under 19 U.S.C. § 1516a(a)(2)(A)(ii) and (a)(2)(B)(vi) to challenge Commerce's final determination in the covered-merchandise referral. Fedmet moved for judgment on the agency record and the Government and the Committee—who intervened in support of the Government—opposed. The Trade Court remanded, holding that Commerce "erred as a matter of law in imposing its five-percent test," J.A. 16, because *Fedmet I* "teaches that the addition of *any* alumina to an MCB takes it outside the orders." J.A. 15. On remand, Commerce issued a redetermination "[u]nder respectful protest," J.A. 2821, concluding that seven sample bricks were not covered merchandise because they "contained an above-zero quantity of alumina." J.A. 2824. Commerce also noted that Customs had retested the four remaining sample bricks using XRD and the results indicated that each contained added alumina. J.A. 2824. But because these results were not on the administrative record, Commerce directed Customs "to apply the [alumina content] standard set forth" in the Trade Court's decision as to those four samples. J.A. 2824–25, 2828. The Committee sought reconsideration of the Trade Court's ruling that the orders do not cover MCBs with less than five percent alumina, and the Trade Court denied reconsideration and sustained Commerce's redetermination made under protest. J.A. 19–25.

The Committee appeals.[2] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The Committee argues that the Trade Court erred in concluding that Commerce's scope rulings that set a minimum threshold of alumina to constitute an out-of-scope MAC brick contravened *Fedmet I*. According to the Committee, Commerce properly interpreted and applied the orders to cover MAC bricks with less than five percent alumina. We disagree.

We "review[] the Trade Court's grant or denial of judgment on the agency record without deference." *Fedmet I*, 755 F.3d at 918 (first citing *Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343, 1346 (Fed. Cir. 2005); and then citing *ThyssenKrupp Acciai Speciali Terni S.p.A. v. United States*, 603 F.3d 928, 932 (Fed. Cir. 2010)). "We apply anew the same standard of review used by the Trade Court." *Id.* (citing *Atar S.r.l. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013)). "Accordingly, we must uphold Commerce's scope determination unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Id.* (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).

Here, the Trade Court's judgment on the agency record hinges on its interpretation of *Fedmet I* as "teach[ing] that the addition of *any* alumina to an MCB takes it outside the orders, which 'are limited to only "certain" MCBs.'" J.A. 15 (quoting *Fedmet I*, 755 F.3d at 922 n.7). We discern no error in the Trade Court's reading of *Fedmet I*. There, we

---

[2] Although the Government filed a separate appeal from the Trade Court's decision, the Government voluntarily dismissed its appeal and filed a notice of non-participation in the present appeal. ECF Nos. 25, 26.

explicitly determined that "the orders are limited to 'magnesia carbon bricks,'" *Fedmet I*, 755 F.3d at 921, and "nothing in the (k)(1) sources detracts from the otherwise clear statements that *all* MAC bricks were excluded from the scope of the underlying investigations." *Id.* at 922. We based that conclusion on "multiple statements in the (k)(1) sources disclaiming coverage of MAC bricks." *Id.* at 921. For example, we emphasized that during the underlying investigations, Resco repeatedly "disclaim[ed] coverage of all MAC bricks in general," and both Commerce and the ITC "underst[ood] that the underlying investigations did not extend to MAC bricks" based on Resco's representations. *Id.* at 919–20. We explained that "Resco had an opportunity to clarify whether MAC bricks were included within the scope of the investigations, and it confirmed that they were not." *Id.* at 920. We concluded that "[i]n doing so, Resco chose to rely on industry terminology to continue to define the subject merchandise and the domestic like product." *Id.*

Although the parties now debate whether any amount of alumina is sufficient to convert an MCB into an out-of-scope MAC brick, that is exactly the issue that *Fedmet I* already decided. In *Fedmet I*, we did not consider the physical characteristics, performance differences, or uses of the bricks in determining whether the industry designates a brick an MCB or a MAC brick. *See id.* at 920–21. Instead, we held that because Commerce and the ITC accepted Resco's representations that industry terminology was sufficient, and therefore decided "not to go beyond the 'name' of MAC bricks, not to provide any chemical composition or technical specifications for MAC bricks, and not to adopt an explicit exclusion for MAC bricks," Commerce could not later go beyond "the meaning given to the term MAC bricks in the underlying investigations." *Id.* at 921. *Fedmet I* therefore held that *all* MAC bricks were excluded "by name." *Id.* at 922.

To the extent that an MCB can sometimes be referred to "by name" as a MAC brick, we already contemplated this in *Fedmet I.* *Id.* We recognized "the fact that the (k)(1) sources identify no 'cut-off point' at which addition of alumina to an MCB transforms it into a MAC brick." *Id.* at 921. Indeed, we found that neither the scope language nor the (k)(1) sources provided any basis for distinguishing among in-scope MCBs and out-of-scope MAC bricks based on specific alumina percentages. *See id.* at 922. Accordingly, we concluded that "[t]o the extent that MCBs and MAC bricks do in fact overlap to some degree, the overlap was surrendered by Resco's failure to provide a technical definition or 'cut[-]off point' when asked to be more specific." *Id.* at 921; *see id.* ("A petitioner has an obligation to be explicit and precise in its definition of the scope of the petition both prior and during the investigation."); *see also id.* at 922 n.7 ("Even if, in fact, MCBs do overlap to some extent with MAC bricks, there would be no inconsistency between our interpretation of the (k)(1) sources and the orders because the latter are limited to only 'certain' MCBs."). *Fedmet I* thus held that MCBs with any amount of added alumina constitute out-of-scope MAC bricks for purposes of the orders.

Moreover, *Fedmet I* already contemplated the Committee's argument that allowing the addition of any amount of alumina to transform an MCB into an out-of-scope MAC brick would render the orders a nullity. For example, the dissenting opinion in *Fedmet I* criticized the majority opinion as "leav[ing] the [o]rders open to manipulation" because "[r]ather than paying the . . . duties on MCBs, importers can simply add small amounts of alumina to their products and label them MAC bricks instead of MCBs." *Id.* at 925 (Wallach, J., dissenting). Thus, the majority in *Fedmet I* already contemplated the very evasion tactic that the Committee now accuses Fedmet of employing but maintained its interpretation of the orders.

Even if we agreed with Commerce and the Committee that refractory bricks qualify as out-of-scope MAC bricks only if they have sufficient alumina to form spinel and thus have the "'distinct properties' that distinguish MAC bricks from MCBs," *id.* at 917 (majority opinion), we are bound by our prior holding. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned in banc." (emphasis removed)). Our opinion in *Fedmet I* is dispositive here because it held that the orders do not cover MCBs with *any* added alumina and any overlap between MCBs and MAC bricks was surrendered during the initial investigation. Accordingly, we agree with the Trade Court that when Commerce relied on later scope rulings to set a minimum threshold of alumina in its covered merchandise inquiry, it impermissibly changed the scope of the orders contrary to *Fedmet I*. *See Fedmet I*, 755 F.3d at 921–22 ("While Commerce enjoys considerable latitude in clarifying its orders, it may not change the original scope of its orders through the interpretative process." (first citing *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1383 (Fed. Cir. 2005); and then citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002))). Thus, Commerce applied the wrong legal standard by going beyond the meaning given to the term "magnesia carbon bricks" and unlawfully expanding the scope of the orders, as interpreted in *Fedmet I*, to include Fedmet's MAC bricks with less than five percent alumina.

The Committee, however, might not be left without recourse. In addition to seeking rehearing en banc in this appeal, the Committee may consider requesting that Commerce "initiate and conduct a circumvention inquiry . . . and issue a circumvention determination" under 19 U.S.C. § 1677j. 19 C.F.R. § 351.226(a). Such circumvention inquiries specifically allow Commerce "to apply antidumping and countervailing duty orders in such a way as to prevent

circumvention by," *id.*, "includ[ing] within the scope of an antidumping or countervailing duty order articles altered in form or appearance in minor respects," *id.* § 351.226(j); 19 U.S.C. § 1677j(c)(1). Specifically, Commerce "may consider such criteria including . . . the overall physical characteristics of the merchandise[] (including chemical, dimensional, and technical characteristics), the expectations of the ultimate users, the use of the merchandise, the channels of marketing and the cost of any modification relative to the total value of the imported products." 19 C.F.R. § 351.226(j). As such, the Committee may choose to allege that any MCBs with trace amounts of alumina insufficient to form spinel and cause the distinctive properties of MAC bricks are MCBs that have only been "altered in form . . . in minor respects." 19 U.S.C. § 1677j(c)(1).

## CONCLUSION

We have considered the Committee's remaining arguments and do not find them persuasive. For the foregoing reasons, we affirm the Trade Court's decision.

## **AFFIRMED**